# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| TIARA DOTSON, SHONDA FA-VORS, and WARE HAULING, LLC, individually and on behalf of all others similarly situated, | Civ. A. No. _____ |
| Plaintiffs | Class Action |
| v. | Jury Trial Demanded |
| BIOLAB, INC. and KIK CUSTOM PRODUCTS INC., d/b/a/ KIK CONSUMER PRODUCTS, |  |
| Defendants |  |

# CLASS ACTION COMPLAINT

Michael B. Terry
Jason J. Carter
Jane D. "Danny" Vincent
BONDURANT MIXSON & ELMORE, LLP
1201 W. Peachtree St., Suite 3900
Atlanta, GA 30309

J. Benjamin Finley
N. Nickolas Jackson
THE FINLEY FIRM, PC
3355 Lenox Road, N.E., Suite 750
Atlanta, GA 30326

*Counsel for Plaintiffs*

Tiara Dotson, Shonda Favors, and Ware Hauling, LLC, individually and on behalf of all others similarly situated ("class members"), bring this class action complaint against Defendants KIK Custom Products Inc., d/b/a KIK Consumer Products, and Bio-Lab, Inc. for damages resulting from a fire and explosion at their Conyers, Georgia, chemical plant on September 29, 2024.

## PARTIES

1.  Plaintiff Tiara Dotson ("Plaintiff Dotson") has been a resident of 250 Salem Glen Way, Conyers, Rockdale County, Georgia 30013 for three years. Plaintiff Dotson was subject to the shelter-in-place order.

2.  As a result of the fire, Plaintiff Dotson was forced to evacuate her home at 250 Salem Glen Way to her parents' home, which was also within geographical boundaries of the shelter-in-place order.

3.  Despite staying indoors, closing all windows, and only using fans for air circulation, Plaintiff Dotson has experienced various health issues including respiratory issues and burning of the eyes.

4.  As a result of the shelter-in-place order, Plaintiff Dotson missed one day of work as a Claim Service Specialist with Allstate Insurance Company, resulting in a loss of income.

1

5.   Plaintiff Shonda Favors ("Plaintiff Favors") has been a resident of 3700 Jolane Terrace SE, Conyers, Rockdale County, Georgia 30094 for the past three years. Plaintiff Favors was subject to the evacuation order.

6.   As a result of the Bio Fire, Plaintiff Favors was forced to evacuate her home at 3700 Jolane Terrace for three days.

7.   Plaintiff Favors is employed as a postal carrier by the United States Postal Services, and as an essential worker, was forced to work in the toxic fumes throughout Rockdale County, Georgia.

8.   Plaintiff Favors experienced various health issues including respiratory issues and burning of the eyes.

9.   Plaintiff Ware Hauling, LLC ("Plaintiff Ware Hauling") operates a trucking and logistics business, which is located at 5561 Turnstone Drive SW, Conyers, Rockdale County, Georgia 30094. Plaintiff Ware Hauling has been in business since 2014 and was subject to the shelter-in-place order.

10.  Plaintiff Ware Hauling experienced a disruption in business operations as a result of the shelter-in-place order and lost two days of revenue as a result.

11. Plaintiff Ware Hauling estimates its lost revenue between $5,000 and $10,000.

12. Upon information and belief, Defendant Bio-Lab, Inc. ("Biolab") is a Delaware company engaged in the business of manufacturing and/or supplying swimming pool and spa water care chemicals, with its principal office located at 101 MacIntosh Blvd, Concord, ON, L4K4R5, Canada.

13. Biolab is licensed to do business in the State of Georgia and at all relevant times, owned and operated the Conyers, Georgia chemical plant located at 1700 Covington Hwy, Conyers, GA 30012 ("Conyers Plant").

14. Biolab may be served through its registered agent for service of process, CT Corporation System, 289 S. Culver St., Lawrenceville, Georgia 30046.

15. Upon information and belief, Biolab is a wholly owned subsidiary of Defendant KIK Custom Products Inc.

16. Upon information and belief, KIK Custom Products, Inc. ("KIK") is a corporation formed under the laws of the state of Delaware with its principal places of business in Lawrenceville, Georgia.

17. KIK may be served through its registered agent for service of process, CT Corporation System, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

18. Upon information and belief, Biolab has consistently held itself out as conducting business affairs as a conduit for KIK in connection with the ownership and operation of the chemical enterprise, including promoting itself as "the swimming pool and spa water care division of KIK Consumer Products, based in Lawrenceville, Georgia."[1]

19. Additionally, Biolab and KIK constituted a joint venture in connection with their chemical enterprise in as much as they agreed to undertake ownership and operation of the enterprise jointly, including "KIK Biolab – Conyers,"[2] for the purpose of sharing associated profits and losses, and each contributed their respective skills, property or resources in exercising control or a right of control over the facilities.

## JURISDICTION & VENUE

20. This action is brought on behalf of residents of Rockdale County, Georgia for personal injury, property damage, and lost property use caused by

---

[1] https://www.biolabinc.com

[2] https://www.kikcorp.com/contact-us

4

Defendants' handling of ultrahazardous materials, negligence, nuisance, trespass, and willful and wanton conduct.

21. The injuries of Plaintiffs and the other class members occurred in Georgia.

22. Plaintiffs' and the other class members' injuries directly resulted from Defendants' acts or omissions at and around the Conyers Plant.

23. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant KIK is a citizen of Delaware and Georgia, Defendant Biolab is a citizen of Delaware and Canada, and Plaintiffs and all class members are citizens of Georgia.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in Rockdale County, Georgia in the Northern District of Georgia, Atlanta Division.

## COMMON FACTUAL ALLEGATIONS

25. Among other activities, the Conyers Plant processes and packages trichloroisocyanuric acid ("TCCA") for consumer use.

26. TCCA is a chlorinating agent used for sanitizing swimming pools and hot tubs.

5

27. TCCA and other materials processed at the Conyers Plant are hazardous materials that are highly reactive when exposed to certain conditions, including water.

28. On September 29, 2024 a fire broke out at the Conyers Plant (the "Bio Fire").

29. Biolab did not have an adequate fire protection system to quickly and effectively extinguish fires at their facility while also avoiding causing dangerous chemical reactions with water-reactive chemicals.

30. Biolab's failure to possess and utilize an effective fire protection system exacerbated the harm caused by the fire at the Conyers Plant and delayed emergency response to the fire.

31. Upon information and belief, the fire ignited when a sprinkler head malfunctioned causing water to mix with a water-reactive chemical, triggering explosive chemical reactions.

32. Among the chemicals released in the Bio Fire were chlorine, chloramine and chlorine compounds, carbon monoxide, hydrogenchlonide, and phosgene.[3]

---

[3] https://www.rockdalecountyga.gov/faq-biolab/

33. These chemicals contaminated the air and settled on property for days fol-
lowing the explosion.

34. These chemicals are toxic and can cause or exacerbate numerous health
conditions including, but not limited to: irritation of the eyes and airways,
coughing, shortness of breath, difficulty breathing, chest tightness, a
scratchy throat, irritated sinuses, headaches, stinging eyes, or a runny
nose. People with heart disease might experience chest pain, palpitations,
shortness of breath, or fatigue. People with lung disease may not be able
to breathe as deeply or as vigorously as usual, and they may experience
symptoms such as coughing, phlegm, chest discomfort, wheezing, and
shortness of breath.[4]

35. On September 29, 2024, Rockdale County issued an evacuation order for
the area designated below:[5]



---

[4] *Id.*

[5] https://www.rockdalecountyga.gov/updates-on-bio-fire-9-29-24/.

36. The evacuation order affected approximately 17,000 residents.

37. On September 29, 2024, Rockdale County issued a shelter-in-place order for all of Rockdale County not affected by the evacuation order.[6]

38. Individuals sheltering in place were told by officials to keep windows and doors closed and to turn off their air conditioning.

39. The shelter-in-place order affected approximately 77,000 residents.

40. Businesses in Rockdale County were asked to remain closed until the shelter-in-place order was lifted.

41. The shelter-in-place order remained in effect until the morning of October 7, 2024.

## CLASS ALLEGATIONS

42. Pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, Plaintiffs seek to certify and represent a class defined as:

> **All residents and business owners subject to the Rockdale County shelter-in-place and evacuation orders issued in response to the Bio Fire.**

43. In the alternative, Plaintiffs see to certify the following sub-classes:

---

[6] *Id.*

(a) **Rockdale County residents subject to the shelter-in-place order;**

(b) **Rockdale County residents subject to the evacuation order;**

(c) **Rockdale County businesses subject to the shelter-in-place order.**

44. Specifically excluded from the Class are Defendants, including any parent, subsidiary, affiliate, or controlled person of Defendants; Defendants' officers, directors, agents, or employees, the judicial officers assigned to this litigation and any members of their staffs and immediate families, and any juror assigned to this action.

45. Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

46. **Numerosity**. Pursuant to Fed. R. Civ. P. 23(a)(1), the class is so numerous as to make joinder impractical. The putative class exceeds 90,000 individuals. Class members can be easily and objectively identified through state and county records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media and/or published notice.

47. **Commonality & Predominance**. Pursuant to Fed. R. Civ. P. 23(a)(2) and 23(b)(3), common issues of fact and law predominate this litigation. The only individual issue is the extent of injury suffered by each class member. Common issues of fact and law include, but are not limited to:

(a) Whether Defendants were engaged in an ultrahazardous activity;

(b) Whether Defendants failed to implement and maintain reasonable safety procedures and practices appropriate to the nature and scope of its chemical manufacturing at the Conyers Plant;

(c) Whether Defendants failed to safely store hazardous chemicals;

(d) Whether Defendants' faulty sprinkler system contributed to the fire;

(e) Whether Defendants knew or should have known their policies, processes, practices, and procedures were insufficient to ensure the safety of its plant operations at the Conyers Plant;

(f) Whether Defendants caused the Bio Fire in violations of rules and regulations;

(g) Whether Defendants failed to adequately respond to the Bio Fire;

(h) Whether Defendants' failures amounted to negligence;

(i) Whether Defendants' actions resulted in trespass to the property of Plaintiffs and class members;

(j) Whether Defendants' actions amounted to nuisance;

(k) Whether Defendants' actions were willful or wanton;

(l) Whether exposure under these circumstances causes long-term medical issues that warrant medical monitoring at Defendants' expense;

(m) Whether Plaintiffs and the class members suffered legally cognizable damages as a result of Defendants' misconduct;

(n) Whether Plaintiff and the class members are entitled to damages including compensatory and punitive damages, and/or injunctive relief.

48. **Typicality**. Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the class members because they either reside in or own businesses in the shelter-in-place or evacuation zones. Plaintiffs' and class members' claims all arise from the same wrongful conduct and single event, and all claims are based on the same common questions of fact and law.

49. **Adequacy**. Pursuant to Fed. R. Civ. P. 23(a)(4), Plaintiffs can and will adequately represent the interests of all class members as their interests are the same. Plaintiffs are aware of no conflict of interest with the class. Plaintiffs' counsel—Bondurant Mixson & Elmore, LLP and The Finley Firm, PC—have extensive experience litigating class actions, including environmental claims, and sufficient financial resources to ensure the class interests are fairly represented.

## COUNT 1 – ULTRAHAZARDOUS ACTIVITES

50. Plaintiffs reallege the allegations in ¶¶ 25–34.

51. Defendants are engaged in an ultrahazardous activity in the manufacture, processing, and storage of chlorine and other hazardous chemicals.

52. The manufacture, processing, and storage of highly toxic and combustible chemicals is abnormally dangerous and cannot be made safe by the exercise of the utmost care.

53. Defendants' manufacture, processing, and storage of these toxic and hazardous chemicals was the direct and proximate cause of the chemical fire and toxic chemical plume.

54. Defendants are strictly liable for any and all damages which may occur or arise out of manufacture, processing, and storage of chlorine and other hazardous chemicals regardless of their standard of care.

55. The ultrahazardous nature of Defendants' conduct is evident in the history of repeated chemical fires at the Conyers Plant, and other Biolab facilities around the country, caused when water-reactive chemicals came into contact with water.

56. The harm to Plaintiffs and the class members was and is the kind of harm that would be reasonably anticipated based on the normal risks created by manufacturing, processing, and storing hazardous chemicals in close proximity to residential, commercial, and agricultural areas.

**COUNT 2 – NEGLIGENCE**

57. Plaintiffs reallege the allegations in ¶¶ 25–34.

58. Defendants knew or should have known of the risk of fire and chemical reaction created by the improper handling and storage of TCCA.

59. Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic smoke and debris into the surrounding neighborhood and communities.

60. Defendants owed Plaintiffs and class members a duty to operate the Conyers Plant in a manner that would not cause Plaintiffs and class members injury or harm.

61. Defendants had a duty to prevent the release of toxic smoke and debris from the Conyers Plant.

62. Defendants breached the duties that they owe to Plaintiffs and class members, to exercise reasonable care, which has interfered with class members' property and caused property damage, lost profits, loss of use, and expected diminution of property value.

63. Defendants breached their duties by, among other things:

   (a) Failing to ensure that chemicals were stored in a manner that would prevent them from coming into contact with water;

   (b) Failing to take sufficient precautions to prevent a fire, including but not limited to, failing to ensure the adequacy and operation of sprinklers at the Conyers Plant;

(c)   Failing to create and/or implement corporate policies and procedures that would prevent ignitions, explosions, and runaway chemical reactions from happening;

(d)   Otherwise failing to take sufficient precautions to control the emissions of toxic and harmful substances, smoke, debris, particulate matter, dust, and/or other pollutants from Plaintiffs' and class members' property.

64.   As a direct and proximate cause of Defendants' negligent conduct, Plaintiffs and class members have incurred, and will continue to incur, monetary damages arising from personal injury, property damage, and loss of use of their property.

## COUNT 3 – NUISANCE

65.   Plaintiffs reallege the allegations in ¶¶ 28, 32–34.

66.   Defendants knew or should have known of the risk of fire at the Conyers Plant.

67.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic chemicals and debris into the surrounding areas.

68.   The Bio Fire caused the uncontrolled discharge of toxic chemicals and debris into the surrounding areas.

69. In allowing toxic chemicals and debris to escape into the open air through their reckless and negligent conduct or omissions, Defendants interfered with public health, safety, peace, comfort, and convenience.

70. Defendants' intentional, reckless, and negligent conduct caused, and continues to cause, physical harm and mental distress to Plaintiffs and class members and has substantially interfered with Plaintiffs' and class members' ability to enjoy and use their properties and neighborhoods, and to carry on their businesses.

## COUNT 4 – TRESPASS

71. Plaintiffs reallege the allegations in ¶¶ 28, 32–34.

72. Defendants' intentional, reckless, and negligent conduct caused the uncontrolled discharge of toxic chemicals and debris into the surrounding areas.

73. Plaintiffs and class members have legitimate possessory rights in property affected by the Bio Fire.

74. Defendants' discharge of toxic chemicals and debris invaded the Plaintiffs' and class members' properties.

75. Plaintiffs and class members did not consent to the entry of such materials onto their properties.

15

76. This intrusion and interference with Plaintiffs' and class members' enjoyment of land is ongoing and represents an unreasonable and unlawful trespass, which has interfered with their possessory right.

## COUNT 5 – MEDICAL MONITORING

77. Plaintiffs reallege the allegations in ¶¶ 27, 32, and 34.

78. The toxic chemicals released in the Bio Fire are known to cause or exacerbate health problems.

79. However, the long-term effects of class members' exposure to these chemicals cannot be determined at this time.

80. Given the insidious, unknown, and continuing nature of the harm, Plaintiffs and class members do not have an adequate remedy at law to address future harm and injury caused by Biolab's conduct. The only way to mitigate these future harms is to establish a medical monitoring fund and program that will monitor the development of health problems in class members, keep plaintiffs and class members informed of such developments and research, and ensure class members' access to testing in order to increase the likelihood of early detection and treatment.

## COUNT 6 – PUNITIVE DAMAGES

81. In 2004, the warehouse of the Conyers Plant caught fire, injuring 28 people. The fire produced a toxic chlorine plume that affected residents within 50 miles of the Conyers Plant and authorities closed Interstate 20. Residents within a one-and-a half mile radius of the facility were evacuated. The fire was caused by an explosion fueled by 250,000 pounds of dry chlorine pellets.

82. In 2016, a fire ignited in a storage shed at the Conyers Plant caused by a TCCA leak. The fire was only noticed and reported because a nearby resident smelled smoke and chemicals and called the authorities. The fire was fueled by reactions from chlorine pellets contained in the storage shed. Residents within a one-mile radius of the facility were evacuated.

83. In 2017, flooding from Hurricane Harvey disabled the refrigeration system at Biolab's Crosby, TX facility, causing organic peroxide chemicals to decompose and ignite. Over the course of several days, the plant experienced three fires which consumed more than 350,000 pounds of organic peroxide. Twenty-one people were hospitalized and an evacuation order remained in place for a week.

84. On September 14, 2020, a TCCA reaction and subsequent chemical fire and toxic chemical plume occurred at the Conyers Plant, shutting down

the interstate and causing the evacuation of surrounding businesses. The fire ignited when water reacted with unpackaged TCCA on the floor, causing the TCCA to fume, turn milky white, and produce a plume of hazardous chemicals.

85. Four days later, on September 18, 2020, a trailer containing TCCA caught fire at the Conyers Plant, further releasing toxic materials into surrounding communities.

86. In August 2020, there was a chemical fire at the Biolab facility in Westlake, LA following Hurricane Laura and a large chemical-based cloud containing hundreds of thousands of pounds of chlorine quickly spread through surrounding areas.

87. A federal investigation revealed that the cause of the Westlake fire and chemical cloud was rainwater which came into contact with stored TCCA, which initiated a chemical reaction, decomposition, and fire.

88. The investigation also found that the Westlake facility "did not adequately maintain its fire protection system to protect against fire hazards and ensure its functionality during an emergency," which "contributed to the severity of the incident."

89. The report specifically identified multiple safety issues including "inade-
quate preparation for extreme weather" following the fire at the Crosby,
TX facility and failure to adhere to the existing National Fire Protection
Association's codes for high-hazard industry occupancies.

90. In November 2022, Biolab celebrated a reopening of the Westlake Facility
touting it as stronger and safer than ever.

91. Five months later, in March 2023, the Westlake facility experienced an-
other chlorine leak, which caused a plume of toxic chemicals and prompted
officials to issue a shelter-in-place order.

92. Four months later, on July 2, 2024, the Westlake facility again caught fire,
prompting freeway closures and shelter-in-place orders.

93. And, of course, on September 29, 2024, less than three months later, a wa-
ter intrusion at the Conyers Plant caused a fire and explosion that closed
down I-20 and required both shelter-in-place and evacuation emergency
orders.

94. This intentional, willful, and wanton conduct creates a presumption of con-
scious indifference to the consequences of its actions that warrant the im-
position of punitive damages.

## COUNT 7 – ATTORNEYS' FEES

95. Plaintiffs reallege the allegations in ¶¶ 81–94.

96. Plaintiffs and class members are entitled to their reasonable attorneys' fees under O.C.G.A. § 13-6-11 because Defendants have acted in bad faith.

97. In addition to the previous leaks, fires, and explosions at the Conyers Plant over the past 20 years, as well as additional leaks and fires nationwide, Defendants were put on notice in February 2024 that "[m]ultiple areas in the [Conyers] facility…showed a neglect of facility maintenance to the point of creating potential safety hazards," and were told to "take some action to address this issue."[7]

98. Defendants' reckless disregard of their safety obligations and refusal to make necessary improvements evidences their bad faith and entitles Plaintiffs and the class to recover their reasonable attorneys' fees.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other class members, respectfully request that this Court:

---

[7]https://www.ajc.com/news/business/chlorine-product-maker-biolab-has-history-of-fires-and-chemical-leaks/ET4CU6BAVVD55C2BMLTT7PQ2TY/#

(a)  Issue an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in the manner described above;

(b)  Appoint Plaintiffs as class representatives and their undersigned counsel as class counsel;

(c)  Issue a class wide judgment holding Defendants liable for the reasons described above for their unlawful conduct causing Plaintiffs and class members to sustain damages resulting therefrom;

(d)  Award Plaintiffs and class members compensatory damages in an amount that is fair, just, and reasonable, to be determined at trial;

(e)  Award Plaintiffs and class members punitive damages in an amount that is fair, just, and reasonable, to be determined at trial;

(f)  Establish a medical monitoring fund;

(g)  Award interest to Plaintiffs and class members as permitted by law;

(h)  Award reasonable attorneys' fees and costs of suit; and

(i)  Any and all additional relief that the Court deems just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of the other proposed class members, demand a trial by jury on all issues herein so triable pursuant to Fed. R. Civ. P. 38.

*/s/ Jane D. Vincent*
Michael B. Terry
Ga. Bar No. 702582
terry@bmelaw.com
Jason J. Carter

21

Ga. Bar No. 141669
carter@bmelaw.com
Jane D. "Danny" Vincent
Ga. Bar No. 380850
vincent@bmelaw.com
BONDURANT MIXSON & ELMORE, LLP
1201 W. Peachtree St., Suite 3900
Atlanta, GA 30309

J. Benjamin Finley
Ga. Bar No. 261504
bfinley@thefinleyfirm.com
N. Nickolas Jackson
Georgia Bar No. 841433
njackson@thefinleyfirm.com
THE FINLEY FIRM, PC
3355 Lenox Road, N.E., Suite 750
Atlanta, GA 30326
T: 404-320-9979
F: 404-320-9978

*Counsel for Plaintiffs*